1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8   WAYNE E. GALINSKI,                                  NO.  C11-516-RSL-JPD

9                           Plaintiff,

10           v.                                          REPORT AND
                                                        RECOMMENDATION
11   MICHAEL J. ASTRUE, Commissioner of
     Social Security,
12
                            Defendant.
13

14          Plaintiff Wayne E. Galinski appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner") which denied his application for

16   Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17   §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

18   forth below, the Court recommends that the Commissioner's decision be REVERSED and

19   REMANDED.

20                  I.       FACTS AND PROCEDURAL HISTORY

21          At the time of the administrative hearing, plaintiff was a fifty-three year old man with a

22   tenth-grade education.  Administrative Record ("AR") at 62.  His past work experience

23   includes employment as a construction worker, packer for a moving company, and day laborer

24

1  at a temporary agency. AR at 150. The parties dispute when the plaintiff was last gainfully

2  employed. AR at 16-17.

3         On September 25, 2006, plaintiff filed a claim for SSI payments, alleging an onset date

4  of July 1, 2005. AR at 102. Plaintiff asserts that he is disabled due to a head injury, liver

5  condition, hepatitis C, left knee pain, and inability to concentrate. AR at 148.

6         The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 36-

7  37, 40-43. Plaintiff requested a hearing which took place on May 14, 2009. AR at 37. On

8  August 27, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits

9  based on a finding that plaintiff could perform jobs existing in significant numbers in the

10  national economy. AR at 14-34. Plaintiff's administrative appeal of the ALJ's decision was

11  denied by the Appeals Council, AR at 1, making the ALJ's ruling the "final decision" of the

12  Commissioner as that term is defined by 42 U.S.C. § 405(g). On March 25, 2011, plaintiff

13  timely filed the present action challenging the Commissioner's decision. Dkt. 3.

14                    II.    JURISDICTION

15         Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

16  405(g) and 1383(c)(3).

17                    III.    STANDARD OF REVIEW

18         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

19  social security benefits when the ALJ's findings are based on legal error or not supported by

20  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

21  Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

22  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

23  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

24

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Galinski bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are

of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On August 27, 2009, the ALJ issued a decision finding the following:

1.    The claimant has engaged in substantial gainful activity since September 20, 2006, the application date.

2.    The claimant has the following severe impairments: degenerative joint disease and meniscal tear in the left knee, cirrhosis/Hepatitis C, rule-out cognitive disorder NOS, status-post history of head injuries, mood disorder NOS, and rule-out personality disorder.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally crawl. He should avoid concentrated exposure to hazards. He retains the mental functional capacity to understand, recall, and carry out simple, repetitive tasks. He should avoid working with the general public, but he can work with a supervisor and a few coworkers. He would do best with a predictable work routine.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on XXXXX, 1955 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.[2]

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 20, 2006, the date the application was filed.

AR at 16-34.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1. Was the plaintiff engaged in substantial gainful employment during the period under review?

2. Did the ALJ err in making an adverse credibility determination?

3. Did the ALJ err in evaluating the medical evidence?

4. Did the ALJ err in determining plaintiff's RFC?

5. Did the ALJ err in relying upon the Grids at step five?

Dkt. 15 at 1-2.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

## VII.    DISCUSSION

A.    The ALJ Did Not Err By Finding that the Plaintiff Engaged in Substantial Gainful Activity During Part of the Period at Issue

*1.    Standard for Evaluating Substantial Gainful Activity*

"Substantial gainful activity is work that is both substantial and gainful[,]" meaning work activity that involves doing significant physical or mental activity, even if it is done on a less than full time basis.  20 C.F.R. §§ 404.1572, 416.972 (a).  It must also be activity that is ordinarily done for pay or profit.  *Id.* at 416.972 (b).  If a claimant is able to engage in substantial gainful activity he will not be found to be disabled.  *See* 20 C.F.R. §§ 404.1571, 416.971.  Generally, in evaluating work activity to determine whether it constitutes substantial gainful activity, an individual's earnings are the primary consideration.  *See* 20 C.F.R. § 404.1574(a)(1).

For work performed in 2007, average earnings of more than $900.00 per month are presumptive of substantial gainful activity.  *See* 20 C.F.R. § 404.1574(b) and http://www.ssa.gov/oact/cola/sga.html.  For work performed in 2008, average earnings of more than $940.00 per month are presumptive of substantial gainful activity.  *Id.*

Work may be considered an "unsuccessful work attempt" if the claimant works for less than six months and is forced to stop working or reduce the amount of hours worked because of the claimant's impairments.  *See* 20 C.F.R. § 404.1574(c).  The Social Security Administration provides:

> (3) *If you worked 3 months or less.* We will consider work of 3 months or less to be an unsuccessful work attempt if you stopped working, or you reduced your work and earnings below the substantial gainful activity earnings level, because of your impairment or because of the removal of special conditions which took into account your impairment and permitted you to work.

(4) *If you worked between 3 and 6 months.* We will consider work that lasted longer than 3 months to be an unsuccessful work attempt if it ended, or was reduced below substantial gainful activity earnings level, within 6 months because of your impairment or because of the removal of special conditions which took into account your impairment and permitted you to work and—

(i) You were frequently absent from work because of your impairment;

(ii) Your work was unsatisfactory because of your impairment;

(iii) You worked during a period of temporary remission of your impairment; or

(iv) You worked under special conditions that were essential to your performance and these conditions were removed.

*Id.* (emphasis in the original).

Plaintiff argues that his work history reflects "several failed attempts to continue to work during the past several years," which the ALJ erroneously characterized as substantial gainful activity. Dkt. 15 at 8-10. Plaintiff argues that these work attempts "ended due to . . . physical and mental impairments." *Id.* at 9. Plaintiff also notes that his "testimony, along with the short duration of [his] work and the nature of day labor, which allowed him to work only on days he felt well enough, further support a finding that this work activity was an [unsuccessful work attempt]." *Id.* at 11. As such, plaintiff argues that the ALJ improperly characterized his unsuccessful work attempt as substantial gainful activity, and used this improper characterization to undermine his credibility throughout the disability determination. *Id.*

Respondent argues that "while [p]laintiff suggests that his work effort 'may be' considered an unsuccessful work attempt, he does not explain why it must be so." Dkt. 16 at 7.

Respondent further notes that the ALJ "found that [p]laintiff had engaged in substantial gainful activity since his protective application date . . . because [p]laintiff's earnings records . . . demonstrated that he reached the level of substantial gainful activity." *Id.* at 4.

At step one, the ALJ found that plaintiff has engaged in substantial gainful activity since his alleged onset date. Specifically, the ALJ found that "[b]ased on the earnings breakdown provided by the claimant's attorney, the undersigned finds that claimant's average monthly earnings from August 2007 through part of February 2008 and from April 2008 through part of July 2008 reached the level of substantial gainful activity." AR at 17. The ALJ further found that the "presumed monthly substantial gainful activity amounts are $900 [for 2007] and $940 [for 2008]," and that he claimant exceeded those amounts for each year. AR at 17. The ALJ also noted that the claimant did not show "that his work activity ended because of his impairments … [and] from August 2007 through July 2008, the claimant did not seek any treatment for physical or mental problems" during the period that the claimant was engaged in substantial gainful activity. AR at 17. Finally, the ALJ noted that "the claimant was employed by Laborworks, an industrial staffing agency, and was likely doing temporary labor [and therefore] nonavailability of work may have explained the gaps in work." AR at 17.

The ALJ properly found that plaintiff had engaged in substantial gainful activity from August 2007 through part of February 2008, and from April 2008 through July 2008. Plaintiff's average earnings in 2007 were $989.71, higher than the presumptive average substantial gainful activity rate of $900. In addition, plaintiff's average earnings in 2008 were $1,283.11, much higher than the presumptive average substantial gainful activity rate of $940.00. Plaintiff correctly notes that work efforts of less than three months or between three months and six months may be considered unsuccessful work attempts. However, as noted

above, plaintiff bears the burden at step one to demonstrate that he did not engage in substantial gainful activity, and to meet this burden, plaintiff needed to establish that his work ended for one of the following reasons: a) frequent absences, b) unsatisfactory work performance because of his impairments, c) temporary remission of the impairment, or d) work that was done under other special conditions.  The ALJ correctly found that plaintiff did not meet this burden.

In addition, the record does not support plaintiff's assertion that he worked only short work days when he felt well enough.  The only evidence of plaintiff's work history in the record is a check history report, which demonstrates the date the checks were made payable to plaintiff and the number of hours paid on each check, not the days in which the hours were worked.  AR at 113-44.  This evidence is insufficient to establish that plaintiff stopped working because of his impairments or because of one of the special conditions listed above.

Moreover, the ALJ found that plaintiff had a break in his work history from mid-February 2008 to April 2008.  However, plaintiff received a paycheck on February 19, 2008, for six hours of pay.  Plaintiff next received a paycheck on April 8, 2008, for 280 hours of pay.  As it is highly unlikely that plaintiff worked 280 hours from April 1, 2008 to April 8, 2008, these hours appear to reflect time worked in February or March of 2008.

Accordingly, the ALJ did not err in finding that plaintiff engaged in substantial gainful activity between September 20, 2006, his alleged onset date, and July 2008.  A claimant will not be found disabled for any period of time during which he or she has engaged in "substantial gainful activity."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1520(a)(4)(i), (b).

It appears that the ALJ did not consider plaintiff to have engaged in substantial gainful activity following July 2008, as the ALJ continued with the five-step sequential evaluation process. The ALJ failed to specify an exact date that plaintiff ceased to engage in substantial gainful activity aside from noting that plaintiff's average monthly earnings "through part of July 2008 reached the level of substantial gainful activity." AR at 17. Giving the plaintiff the benefit of the doubt, the Court will assume that plaintiff ceased to engage in substantial gainful activity as of July 1, 2008.

Thus, the remainder of this Report and Recommendation concerns whether the plaintiff is entitled to benefits for the remainder of the relevant time period, i.e., the date following his substantial gainful activity and the ALJ's decision. In other words, the remaining issue is whether plaintiff is entitled to benefits for the period between July 1, 2008 and August 27, 2009.[3]

B.    The ALJ Did Not Err in Evaluating Plaintiff's Credibility

1.    *Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R.

_____

[3] The relevant time period for plaintiff's SSI application is the period between the alleged onset date, September 20, 2006, through the date of the ALJ's decision, August 27, 2009. As noted above, plaintiff returned to work at a substantial gainful activity level in August 2007, less than twelve months from his alleged onset date of September 20, 2006. As a disability must last or be expected to last at least twelve months to be considered disabling, plaintiff is not entitled to benefits during this period. *See* 42 U.S.C. § 423(d)(1)(A).

§§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

2.    *The ALJ Did Not Err in Making an Adverse Credibility Assessment*

With respect to plaintiff's credibility, the ALJ held that "the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible."  AR at 22.  To support this finding, the ALJ relied upon the fact that plaintiff had engaged in substantial gainful activity and "at no time from August 2007 through July 2008 did the claimant seek any treatment for physical or mental problems."  AR at 23.  In addition, the ALJ noted that the claimant refused treatment for his hepatitis C, and claimant gave inconsistent reports about the degree of his impairments with respect to his knee pain, head injuries, and

depression. AR at 23-24. Finally, the ALJ noted that claimant's credibility is undermined by "inconsistent statements about his substance abuse." AR at 25-26.

As discussed above, the ALJ properly found that plaintiff had engaged in substantial gainful activity through July 31, 2008. As a result, the ALJ could reasonably rely upon this fact to find plaintiff's allegations concerning the severity of his impairments during this time period less than credible.

In addition, plaintiff's inconsistent reports to various treatment providers and evidence showing noncompliance with medication recommendations are valid reasons for finding plaintiff less than credible. SSR 96-7p provides that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."[4] Plaintiff made several inconsistent statements about the extent of his abdominal pain and when the pain started after his hernia surgery. AR at 360-61; 366. Plaintiff also asked one treatment provider to document the fact that his hernia prohibits him from working "for the purposes of DSHS eval[uation]." AR at 250. In addition, treatment providers recommended that plaintiff start on interferon treatment for his hepatitis C, which plaintiff refused. AR at 551.

Finally, plaintiff's inconsistent statements about his history of substance abuse were valid reasons for discounting plaintiff's credibility. In August 2005, plaintiff denied a history of IV drug use. AR at 208. However, in August 2006 and April 2007, plaintiff acknowledged

---

[4] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

prior IV drug use. AR at 253, 484. Although plaintiff stated in March 2007 that he had not had a drink in eight months, plaintiff stated in December 2006 that he drank a few beers a month. AR at 469, 395. Plaintiff also reported occasional use of marijuana, despite prior court orders requiring the claimant to seek treatment for alcohol and substance abuse. AR at 233, 242, 395. The ALJ properly considered plaintiff's inconsistent statements regarding his substance abuse when evaluating plaintiff's credibility.

As noted at the outset, credibility determinations are particularly within the province of the ALJ. In this case, the ALJ carefully considered the evidence, and supported his decision with a detailed examination of the record. Accordingly, the Court finds that the reasons cited by the ALJ for finding plaintiff less than credible are clear and convincing, and supported by substantial evidence in the record.

B. The ALJ Did Not Err in His Evaluation of the Medical Evidence

1. Standards for Reviewing Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

(citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his

conclusions. "He must set forth his own interpretations and explain why they,

rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*,

157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining

physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the

uncontradicted opinions of examining physicians may not be rejected without clear and

convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record.

*Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating

or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the

opinions from such sources and may not simply ignore them. In other words, an ALJ must

evaluate the opinion of a non-examining source and explain the weight given to it. Social

Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives

more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947,

957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

1    In this case, plaintiff argues that the ALJ erred in his assessment of the opinions of Dr.

2    James D. Czysz, Dr. Dawn M. Ehde, Dr. Allen Lee, Dr. Dana Harmon, Dr. Bruce Swarny, and

3    Dr. W.R. Murray Bennett.  Dkt. 15 at 14-21.

4            2.      *James D. Czysz, Psy.D.*

5            James D. Czysz is a clinical psychologist who examined the claimant on September 27,

6    2006.  AR at 277-80.  Dr. Czysz reported that the claimant "presents as a rather grandiose …

7    man [and that claimant] tended to be overly descriptive, often tangential."  AR at 277.  Dr.

8    Czysz indicated that claimant's depressed mood is marked, and that his motor agitation, social

9    withdrawal, hyperactivity, physical complaints, and verbal expression of anxiety or fear are

10   moderate.  AR at 278.  Dr. Czysz also indicated that plaintiff's ability to relate appropriately to

11   coworkers and supervisors and his ability to control physical or motor movements and

12   maintain appropriate behavior is markedly limited.  AR at 279.

13           The ALJ afforded minimal weight to Dr. Czysz's opinion.  AR at 27.  Specifically, the

14   ALJ noted that Dr. Czysz's "assessment of cognitive factors is not supported by the

15   neurobehavioral cognitive status examination he administered."  AR at 27.  In addition, the

16   ALJ noted that Dr. Czysz's "assessment of social factors is inconsistent with the medical

17   evidence and the claimant's activities … [and] [a]lthough the claimant has some anger issues,

18   he is generally able to control himself during examinations."  AR at 27.  Moreover, the ALJ

19   noted that the claimant refused a course of treatment and is not credible, and "to the extent that

20   Dr. Czysz relied on the claimant's subjective complaints, his opinion is further rejected."  AR

21   at 28.  Finally, the ALJ noted that Dr. Czysz's opinion is inconsistent with the claimant's work

22   activities in 2007 and 2008.  AR at 27-28.

23

24

1    Plaintiff avers that the ALJ improperly rejected Dr. Czysz's finding that plaintiff is

2    "markedly limited in his ability to relate appropriately to coworkers and supervisors." Dkt. 15

3    at 15.  Plaintiff also asserts that the "ALJ's finding that the claimant's ability to 'control

4    himself during the examination' is evidence that he could also control himself at a job, eight-

5    hours a day, five days a week, and 50-weeks a year, defies logic and credibility." *Id.* at 16.

6        As noted above, the ALJ is responsible for determining credibility, resolving conflicts

7    in medical testimony, and resolving any other ambiguities that might exist. *Andrews,* 53 F.3d

8    at 1039.  Although Dr. Czysz indicated that plaintiff has difficulty with social interactions,

9    depression, and general functioning, the ALJ could reasonably conclude that the overall record

10   does not support Dr. Czysz's findings.  Plaintiff's functional and daily activities as set forth in

11   the ALJ's opinion, and for which there is substantial support in the record, provides an

12   appropriate basis upon which to reject Dr. Czysz's assessment of the degree of impairment of

13   plaintiff's limitations.  Plaintiff reported throughout the record that he is able to care for

14   himself and maintains relationships with girlfriends and friends.  AR at 160-64, 448, 495, 554.

15   In addition, plaintiff told his doctor that he does not have depression, and he has refused

16   medication to treat depression.  AR at 554, 559.  Although claimant does exhibit anger at

17   times, providers have reported that he is able to control himself during examinations, and can

18   be pleasant at times.  AR at 447, 555.

19       Finally, in light of the ALJ's conclusion that plaintiff is less than credible, the ALJ

20   could reasonably discount Dr. Czysz's opinion because much of the evaluation was based on

21   plaintiff's self-reporting.  Similarly, contrary to Dr. Czysz's opinion that plaintiff would have

22   difficulty working and that he would be disabled for an unknown period of time, the ALJ

23

24

1    correctly noted that plaintiff returned to work and participated in substantial gainful activity

2    shortly after Dr. Czysz's 2006 examination. AR at 277-80.

3          Thus, the Court finds that the ALJ met his burden of providing specific and legitimate

4    reasons for rejecting Dr. Czysz's opinions, and these reasons were supported by substantial

5    evidence in the record. Accordingly, the ALJ did not err in evaluating Dr. Czysz's opinion.

6                    *3.     Dawn M. Ehde, Ph.D.*

7          Dawn Ehde, Ph.D., completed a neuropsychological evaluation of plaintiff in 2006 "in

8    order to help determine the nature of [claimant's] cognitive functioning problems and assist

9    with treatment recommendations." AR at 394. Claimant began the evaluation on November 8,

10   2006. AR at 394. However, because claimant "appeared very fatigued … testing was

11   discontinued for the day … [and] was readministered on the second day of testing" on

12   November 14, 2006. AR at 396. Dr. Ehde noted that much of the background information was

13   self-reported. AR at 394. Dr. Ehde found that "the vast majority of [claimant's] cognitive test

14   performances fell within the broad average range." AR at 399. In addition, Dr. Ehde noted

15   that the claimant "demonstrated difficulties with complex attention and with using strategies to

16   encode non-contextual verbal information." AR at 399. Dr. Ehde suggested that plaintiff's

17   test results "may also be related to extra-test factors, such as fatigue, pain, and/or emotional

18   distress." AR at 399. Finally, Dr. Ehde stated that that claimant "would likely experience

19   significant difficulty returning to any form of competitive employment at this time given his

20   current physical and psychological functioning." AR at 399.

21         The ALJ accorded significant weight to Dr. Ehde's psychometric testing, but no weight

22   to Dr. Ehde's conclusion that the claimant would not be able to return to work. AR at 28.

23   Specifically, the ALJ argued that "Dr. Ehde's opinion is not supported by the claimant's

24

performance on psychometric testing." AR at 28. Moreover, the ALJ noted that Dr. Ehde considered the claimant's physical problems, which was inappropriate as Dr. Ehde is a psychologist and not a medical doctor. AR at 28. The ALJ also rejected Dr. Ehde's opinion because plaintiff was not credible, and had returned to work in 2007 and 2008, contradicting Dr. Ehde's opinion that the claimant could not return to work. AR at 28.

Plaintiff argues that the ALJ's findings with respect to Dr. Ehde are not "clear and convincing or specific and legitimate reasons for rejecting Dr. Ehde's opinions." Dkt. 15 at 17. Plaintiff further asserts that the ALJ "reject[s] Dr. Edhe's professional interpretation of the neuropsychological testifying for his own interpretation." *Id.*

The reasons given by the ALJ to discount Dr. Ehde's opinions regarding plaintiff's ability to return to work were specific and legitimate and supported by the record. As previously noted, Dr. Ehde's opinion was based in part on plaintiff's self-report. AR at 394. Because plaintiff was found to be less than fully credible, his self-reports can impact the validity attached to medical opinions that are dependent upon those reports. *Bayliss*, 427 F.3d at 1217. *See also Browner v. Sec. of Health & Human Serv.,* 839 F.2d 432, 434 (9th Cir. 1988).

The ALJ also properly discounted Dr. Ehde's opinion because Dr. Ehde relied upon physical symptoms in addition to psychological symptoms to form her opinion that plaintiff could not return to work. AR at 399. Dr. Ehde is not a medical doctor and is, therefore, not qualified to assess the medical as opposed to the psychological aspects of plaintiff's condition. *See*, *e.g.*, *Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003) (psychologist opinion properly rejected in part because it was based on consideration of physical impairments); *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (psychologist not qualified to opine

regarding disability based on underlying physical conditions).  Dr. Ehde based her opinion that plaintiff was not able to work on a mixture of physical and psychological problems, which went beyond the area of her expertise.

Finally, the Court notes that Dr. Ehde conducted her evaluation in 2006 and stated that the claimant "would likely experience significant difficulty returning to any form of competitive employment *at this time* given his *current* physical and psychological functioning."  AR at 399 (emphasis added).  Dr. Ehde's report did not indicate that the plaintiff could never return to work.  Moreover, plaintiff subsequently returned to work in 2007 and 2008.  Accordingly, the Court cannot find that the ALJ erred in assessing Dr. Ehde's opinion.

### 4.    *Allen Lee, M.D.*

Allen Lee, M.D., is a treating physician who saw the claimant on February 3, 2007.  Dr. Lee opined that the claimant is able to "perform simple and repetitive tasks," and claimant's "ability to perform work activities on a consistent basis and maintain regular attendance in the workplace would likely remain intact from a psychiatric standpoint."  AR at 448-49.  Dr. Lee also stated that the claimant may have difficulty accepting instructions from supervisors and coworkers.  AR at 448-49.

The ALJ accorded partial weight to Dr. Lee's opinion.  AR at 29.  The ALJ agreed with Dr. Lee that "the claimant could perform work activities on a consistent basis and maintain regular attendance in the workplace."  AR at 29.  However, the ALJ disagreed with Dr. Lee that "the claimant would have difficulty interacting with supervisors and coworkers."  AR at 29.  Specifically, the ALJ noted that the claimant had never been fired from a job, and the claimant is able to "sustain relationships with friends and girlfriends."  AR at 29.  Although the claimant has some documented anger issues, the ALJ noted that "he has generally been able to

control his behavior during examinations." AR at 29. Finally, the ALJ noted that evidence that the plaintiff maintained unskilled work in 2007 and 2008 is evidence that the claimant can "handle the routine work stressors typically associated with simple work." AR at 29. The ALJ also cited to the claimant's mental status examinations and performance on psychometric testing as evidence that the claimant can perform simple tasks. AR at 29.

Plaintiff argues that the "ALJ's 'pick and choose' approach to the opinions in the record is especially evident when he addresses Dr. Lee's opinion." Dkt. 15 at 18. Plaintiff asserts that the "ALJ must consider the record as a whole and cannot pick and choose only those items that support his conclusion; doing so renders the finding unsustainable." *Id.*

The ALJ found the claimant not credible, and appropriately rejected the medical opinions the relied upon the plaintiff's subjective complaints on this basis. Although Dr. Lee opined in his February 2007 opinion that the claimant would have difficulty interacting with coworkers and supervisors, the ALJ properly used plaintiff's substantial gainful activity in late 2007 and early 2008 to reject Dr. Lee's opinion. Moreover, as noted above, plaintiff has been able to maintain relationships with girlfriends and friends and is able to interact with medical providers, further undermining Dr. Lee's opinion that the claimant would have difficulty interacting with others. AR at 160-64, 495, 554, 559.

Finally, the ALJ referred to the psychometric testing and mental status evaluations to refute Dr. Lee's opinion that the claimant may have difficulty dealing with work stressors. As the ALJ correctly noted, these tests indicate that the claimant can manage routine work stressors associated with simple work. AR at 243, 281, 394-400. In addition, the ALJ properly relied upon the fact that the claimant engaged in unskilled work as further evidence that the claimant can handle routine work stressors.

1        Accordingly, the ALJ's decision to partially credit Dr. Lee's opinion was supported by

2 specific and legitimate reasons and was supported by the record. The ALJ did not err in

3 evaluating Dr. Lee's opinion.

4               5.    *Dana Harmon, Ph.D.*

5        Dana Harmon, Ph.D., conducted a psychological evaluation for the Department of

6 Social and Health Services on March 26, 2007. AR at 468-77. Dr. Harmon indicated that

7 plaintiff's expressions of anger are severe. AR at 469. In addition, Dr. Harmon noted that

8 plaintiff has a severe thought disorder in addition to severe physical complaints. AR at 469.

9 Dr. Harmon also indicated that plaintiff's "ability to respond appropriately and tolerate the

10 pressures and expectations of a normal work setting" is severely limited. AR at 470.

11        The ALJ rejected Dr. Harmon's opinion. AR at 29. Specifically, the ALJ noted that

12 "after his evaluation … the claimant managed to engage in substantial gainful activity as a day

13 laborer … without any documented physical or mental problems." AR at 29.

14        Plaintiff argues that the ALJ's reasoning for rejecting Dr. Harmon's opinion fails, as it

15 is "complete[ly] devoid of any specific and legitimate reasons supported by substantial

16 evidence." Dkt. 15 at 19. The Commissioner responds that Dr. Harmon's opinion "was

17 properly discounted due to [plaintiff's] ability to perform work at the substantial gainful

18 activity level without documented physical or [mental] problems." Dkt. 16 at 9.

19        The ALJ appropriately found the claimant not credible. Moreover, the plaintiff

20 engaged in substantial gainful activity fewer than six months after Dr. Harmon issued his

21 opinion that the claimant could not function appropriately in a workplace. AR at 117. As the

22 claimant engaged in substantial gainful activity from August 2007 through February 2008 and

23

24

1  from April 2008 through part of July 2008, the ALJ did not err in rejecting Dr. Harmon's

2  opinion that the claimant could not work.

3           6.      *Bruce Swarny, M.D.*[5]

4           Bruce Swarny, M.D., is a treating physician who saw the plaintiff on January 23, 2009,

5  and April 10, 2009.  AR at 551-60.  In the first evaluation, Dr. Swarny noted that the patient

6  was initially angry and uncooperative, but became more comfortable as the visit progressed.

7  AR at 553-54.  In addition, the claimant noted that he was not interested in interferon treatment

8  or treatment for his psychiatric illness.  AR at 554.  At the second visit, plaintiff again refused

9  medications.  AR at 559.  At both appointments, Dr. Swarny gave claimant a GAF score of

10  51.[6]  AR at 554, 559.

11          The ALJ rejected Dr. Swarny's GAF score of 51, which indicated serious symptoms.

12  AR at 30.  The ALJ noted that this score "is not supported by mental status examination results

13  … [because] claimant obtained a score of '28' out of '30' on a mental status examination [in

14  January 2009], indicating only mild cognitive problems."  AR at 30.  In addition, the ALJ

15  noted that the score "is not consistent with the longitudinal treatment notes, which document

16  minimal mood symptoms."  AR at 30.  Finally, the ALJ found that the claimant denied

17  _____

18          [5] The evaluation forms submitted by Dr. Swarny were also signed by Attending
Physician W.R. Murray Bennett.  The Court will refer to these evaluations as Dr. Swarny's
evaluations, although they reflect the opinions of both signers.

19          [6] The GAF score is a subjective determination based on a scale of 1 to 100 of "the
clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC
20  ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).
A GAF score falls within a particular 10-point range if either the symptom severity or the level
21  of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates
"moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty
22  in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious
symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment
23  in social, occupational, or school functioning," such as the lack of friends and/or the inability
to keep a job.  *Id.*

24

depression, refused psychiatric medications, and the "GAF score is not consistent with claimant's activities." AR at 30.

Plaintiff argues that the ALJ erred in evaluating Dr. Swarny's opinion. Dkt. 15 at 20. Specifically, plaintiff suggests that the ALJ failed "to articulate any clear and convincing reasons for rejecting the foregoing opinion[], and the reliance on the out-dated opinion of the state reviewing physicians and his own medical opinions, is not substantial evidence for rejection of the treating and consulting physician's opinion[] and is legal error." *Id.* at 21.

The reasons given by the ALJ to discount Dr. Swarny's opinion regarding plaintiff's marked social limitations were specific and legitimate and supported by the record. As the ALJ noted, Dr. Swarny's findings are not consistent with claimant's activities. The claimant has relationships with girlfriends and friends, cares for his personal needs, does his laundry, uses public transportation, and attends AA meetings. AR at 160-64, 495, 554. Moreover, the claimant has denied depressive symptoms many times, and has refused treatment for depression and psychiatric disorders. AR at 554, 559. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews,* 53 F.3d at 1039. This Court cannot find that the ALJ erred in assessing Dr. Swarny's opinions.

C.      The ALJ Did Not Err in Evaluating Plaintiff's RFC

An RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200(c). It is an administrative decision as to the most a plaintiff can do, despite his limitations. SSR 96-8p. The ALJ must assess all of the relevant evidence, including evidence regarding symptoms that are not severe, to determine if the claimant retains the ability to work

on a "regular and continuing basis," e.g., eight hours a day, five days a week. *Reddick*, 157 F.3d at 724; *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); SSR 96-8p.

The ALJ assigned the following RFC to the plaintiff in this case:

> [T]he undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally crawl. He should avoid concentrated exposures to hazards. He retains the mental functional capacity to understand, recall, and carry out simple, repetitive tasks. He should avoid working with the general public, but he can work with a supervisor and a few coworkers. He would do best with a predictable work routine.

AR at 21.

Plaintiff avers that the ALJ erred in evaluating the RFC. Specifically, plaintiff argues that "[b]ecause the ALJ's 'analysis' of the medical record falls well short of the detailed reasoning and explanation required by the Commissioner's own rules, it also shows the ALJ failed to consider any of the [claimant's] limitations." Dkt. 15 at 22. Plaintiff further argues that the ALJ "disregarded [his] duties and provided an unsupported RFC that is contradicted by the substantive evidence on the record." *Id.*

The Court finds that the ALJ did not err in evaluating the medical testimony. Plaintiff's only assignment of error with respect to the RFC is that the ALJ erred in evaluating the medical opinions. Because the Court already determined that the ALJ did not err in evaluating the medical opinions, plaintiff has not shown that the ALJ erred in evaluating the claimant's RFC.

D.    The ALJ Erred in Applying the Grids at Step Five

1.    *Standards for Applying the Grids*

An ALJ may rely on the grids to meet his burden at step five.  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).  "They may be used, however, 'only when the grids accurately and completely describe the claimant's abilities and limitations.'" *Id.*  (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).  "When a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable[]" and the testimony of a VE is required.  *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)); *accord Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A]n ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case.")

"[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids.  The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Desrosiers*, 846 F.2d at 577 ("It is not necessary to permit a claimant to circumvent the guidelines simply by alleging the existence of a non-exertional impairment, such as pain, validated by a doctor's opinion that such impairment exists. To do so frustrates the purpose of the guidelines."); *accord Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) ("The regulations . . . explicitly provide for the evaluation of claimants asserting both exertional and nonexertional limitations.").  "Nonexertional impairments may or may not significantly narrow the range of work a person can do."  SSR 83-14.

For example, in *Hoopai v. Astrue*, the Ninth Circuit found that substantial evidence supported the ALJ's conclusion that a claimant's depression, with evidence of various associated moderate limitations, was not a sufficiently severe non-exertional limitation prohibiting reliance on the grids without the assistance of a VE. *Hoopai*, 499 F.3d at 1076-77. By contrast, in *Tackett*, the Ninth Circuit found that a claimant's "need to shift, stand up, or walk around every 30 minutes [was] a significant non-exertional limitation not contemplated by the grids[]" and, therefore, the ALJ's "mechanical application of the grids was inappropriate." *Tackett*, 180 F.3d at 1103-04.

### 2. The ALJ Erred in Relying Upon the Grids

The ALJ found that claimant could perform unskilled work pursuant to Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2. AR at 32. The ALJ further found that the "claimant's limitations would not have a significant effect on claimant's ability to perform unskilled work." AR at 32. The ALJ concluded that "the claimant retains the capacity to perform unskilled work as explicated by Social Security Ruling 85-15." AR at 33. Moreover, the ALJ noted that he "found the claimant to retain the [RFC] to perform work at the medium level of demand … [and] [t]he Medical-Vocational guidelines take administrative notice that there are unskilled medium, light and sedentary occupations, each of which represents numerous jobs in the national economy." AR at 33. The ALJ also noted that "[b]ecause the claimant retains the capacity to perform substantially all of the … unskilled light and sedentary work activities … [his] occupational base for light unskilled work … has not been significantly eroded by [his] nonexertional limitations," and reference to the guidelines is permissible. AR at 33. Finally, the ALJ found that "claimant's capacity to meet the demands of unskilled work is

demonstrated by his work activity in 2007 and 2008 … [and] [h]is exertional limitations do not alter this conclusion." AR at 34.

Plaintiff argues that the ALJ erred in applying the grids. Dkt. 15 at 3-8. Specifically, plaintiff argues that, given the "inaccurate RFC that contains multiple and significant non-exertional limitations," the ALJ committed "legal error" by applying the grids at step five. *Id.* at 4. Plaintiff also asserts that even "assuming the ALJ's RFC is accurate … it includes significant non-exertional impairments … and a VE's testimony is required." *Id.* Plaintiff also contends that *Hoopai* is distinguishable from the present case. *Id.* at 6-7. Specifically, plaintiff notes that in *Hoopai*, the Ninth Circuit affirmed the ALJ's use of the grids when the claimant "had moderate limitations in three out of 20 areas measured [on the] mental residual functional capacity assessment." *Id.* at 6. In contrast, plaintiff has moderate limitations in eight of the twenty areas measured in a mental residual functional capacity assessment. *Id.* Finally, plaintiff argues that SSR 85-15 requires that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to … respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.* at 7 (quotations omitted). As plaintiff's RFC includes two of the three limitations, plaintiff argues that the ALJ inappropriately relied upon SSR 85-15 to apply the grids in this case. *Id.*

Respondent argues that the ALJ applied the grids appropriately. Dkt. 16 at 5. Specifically, the Commissioner points out the medical sources in *Hoopai* and this case "found no mental abilities that were more than 'moderately limited' and found the majority of those abilities 'not significantly limited.'" *Id.* at 6. Respondent further argues that the facts in *Hoopai* are particularly analogous to the facts in claimant's case: "a claimant like [p]laintiff … is not

significantly limited in the universe of unskilled work contemplated by the [g]rids, as to require an ALJ to go beyond those [g]rids." *Id.*

The ALJ erred in relying upon the grids at step five. Specifically, the ALJ relied upon the reasoning in *Hoopai* to obviate the need to call a vocational expert. However, as argued by plaintiff, *Hoopai* is distinguishable from this case. In *Hoopai*, the claimant asserted that the ALJ's determination at step two that the claimant's combination of exertional and nonexertional impairments was severe should have directed a finding of disability at step five. In this case, the severity of the ALJ's finding at step two is not at issue. Rather, the issue is whether the ALJ had substantial evidence, relying solely on the grids, to appropriately determine the existence of a significant number of jobs in the national economy that the plaintiff is able to do in light of his nonexertional limitations.

The ALJ's determination that plaintiff's "additional [nonexertional] limitations have little or no effect on the occupational base of unskilled light work" speculates about the base of unskilled work without supporting this with evidence from the record. AR at 31. The Court agrees with plaintiff that SSR 85-15 requires the ability to "respond appropriately to supervision, coworkers, and usual work situations … and to deal with changes in a routine work setting." SSR 85-15. In addition, SSR 85-15 holds that "substantial loss to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.* Here, the ALJ's RFC assessment determined that the plaintiff "should avoid working with the general public, but he can work with a supervisor and a few coworkers … [and] [h]e would do best with a predictable work routine." AR at 21. On its face, these limitations conflict with the "basic mental demands of competitive, remunerative, unskilled work" in SSR 85-15, which "include the abilities (on a sustained basis) ... to respond appropriately to supervision,

coworkers, and usual work situations." SSR 85-15. In this case, the grids do not "completely and accurately represent" plaintiff's limitations. Thus, the ALJ was required to take vocational expert testimony.

Because the Court finds that the ALJ's reliance on the grids was improper, the ALJ was obligated to hear the testimony of a vocational expert. Accordingly, this case must be remanded on this basis for further fact-finding at step five. On remand, the ALJ shall hear the testimony of a vocational expert to determine the type of work, if any, that the plaintiff is capable of performing.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 16th day of December, 2011.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge